UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SERGIO CASANOLA**                                         **CIVIL ACTION**

**VERSUS**                                                  **NO. 19-300-JWD-SDJ**

**DELTA MACHINE &
IRONWORKS, LLC, et al.**

## ORDER

Before the Court is a Motion to Compel (R. Doc. 51) Plaintiff's complete responses to written discovery propounded by Defendant, Delta Machine & Ironworks, LLC. Plaintiff, who is proceeding pro se, filed an Opposition to the Motion on October 27, 2020. (R. Doc. 54).

In this lawsuit, Plaintiff alleges that Delta violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), by terminating his employment because of his race and national origin. Just a week shy of the discovery deadline, Defendant filed this Motion to Compel (R. Doc. 51).

Rule 26(b)(1) generally allows a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1) (proportionality takes into account "the importance of the issues . . . the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense . . . outweighs its likely benefit."). The court must limit the frequency or extent of discovery that is "unreasonably cumulative or duplicative," the requesting party "has had ample opportunity to obtain," or is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Having reviewed the parties' submissions (R. Docs. 51, 54), as well as the applicable law, the Court resolves Defendant's Motion to Compel (R. Doc. 51) below.

### A.    Documents Identified in Plaintiff's Initial Disclosures

Defendant's Request for Production Nos. 8 and 9 asked Plaintiff to produce documents in his possession that he allegedly took from Delta prior to his termination. (R. Doc. 51-1 at 3-4). Plaintiff has referenced these documents in filings throughout the record (R. Doc. 37 at 2) (Plaintiff's Initial Disclosure); (R. Doc. 42 at 15) (Plaintiff's Motion to Amend) but has refused to produce them in response to Defendant's discovery requests. In his Opposition, Plaintiff claims that he has complied with his obligations under Rule 26(a)(1)(ii), which only required him to provide a description of the documents. Plaintiff is incorrect.

There is a difference between formal discovery requests and initial disclosures. While a "description" of relevant documents "by category and location" will suffice for purposes of initial disclosures, Plaintiff was required to actually produce those documents in response to Defendant's Request for Production Nos. 8 and 9. And as a final note, it is irrelevant under the circumstances that Defendant may also be in possession of copies of these documents. Defendant is entitled to know the exact universe of documents referenced by Plaintiff in his Initial Disclosures (R. Doc. 37 at 2) and other filings (R. Doc. 42 at 15). Therefore, Defendant's Motion to Compel is **GRANTED** as to **Request for Production Nos. 8 and 9**. Plaintiff must **produce** the requested documents within **21 days** of this Order.

### B.    Plaintiff's Tax Returns

Defendant's Request for Production No. 5 asked Plaintiff to "produce copies of all documents reflecting or referencing income earned by you from January 1, 2010 to the present,

including all of your federal and state income tax returns, W-2 forms, W-9 forms, and 1099 forms." (R. Doc. 51-3 at 6). Plaintiff has refused to produce any of the requested information.

Tax returns are highly sensitive documents and the court will only compel their production where the requesting party "demonstrates both: (1) that the tax information is relevant to the subject matter of the action; and (2) that there is a compelling need for the information because the information contained in the tax returns is not otherwise readily obtainable through alternative forms of discovery, such as depositions or sworn interrogatory answers." *Bulter v. Exxon Mobile Ref. & Supply Co.*, 2008 WL 4059867, at *2 (M.D. La. Aug. 28, 2008).

Because Plaintiff is seeking compensatory damages for lost wages, his tax returns are relevant to the litigation. *Butler*, 2008 WL 4059867, at *2 (Numerous courts have recognized "that tax return information is relevant where a plaintiff has placed the subject of his income/earning capacity at issue in litigation."). For the same reason, any other documents evidencing Plaintiff's earnings, which are not subject to the same qualified privilege, are likewise relevant and must be produced. However, as the Court later explains with respect to Interrogatory No. 3, Plaintiff's earnings prior to his employment with Defendant are not relevant to this cause of action. Therefore, the temporal scope of the financial information relevant to Plaintiff's case is limited to the time period during and after his employment with Defendant. Because Plaintiff was hired by Defendant October 12, 2015, only Plaintiff's earnings (and other financial information) between October 12, 2015, and the present are relevant and discoverable.

Second, Defendant has shown a compelling need for Plaintiff's tax returns because he has not produced any other documents relating to the wages he has earned since his termination. While the Court recognizes that this information may also be obtained in response to interrogatories or deposition questions, that fact does not negate Defendant's showing. Plaintiff was asked during

discovery to produce "all documents reflecting" his income. (R. Doc. 51-3 at 6). Defendant claims, and Plaintiff does not dispute, that he has not produced any responsive documents. Plaintiff has likewise not claimed that these documents do not exist. For that reason, Defendant has shown a compelling need for Plaintiff's tax returns.

Therefore, Defendant's Motion to Compel is **GRANTED** in part as to **Request for Production No. 5**. The Court **temporally limits** Request for Production No. 5 to the period between **October 12, 2015**, and the **present**. Subject to the temporal limitations set by the Court, Plaintiff must respond to Request for Production No. 5 within **21 days** of this Order.

### C.     Plaintiff's Employment History

Defendant's Interrogatory No. 3 sought information regarding Plaintiff's employment history, beginning in 1995.

> **Interrogatory No. 3:**
> Please state the name, address, and telephone number of every full time and/or part time employer (including self-employment) that you have worked for during the preceding twenty (20) years of the date of the incident alleged in the Complaint, and through the present date, as well as the start date of any such employment, the termination date of any such employment, a description of the work performed, the average number of hours worked per week, and the average weekly wage or earnings paid by the employer."

(R. Doc. 51-1 at 5). Defendant also seeks production of any supporting documentation in its Request for Production No. 1. Plaintiff objected to these requests, describing the information sought as "privilege and personal" and arguing "the documents requested do not assist Defendant." (R. Doc. 51-1 at 5). To the extent Defendant seeks information regarding Plaintiff's previous employment, the Court agrees.

**Damages.** Defendant claims that information regarding Plaintiff's employment history will be relevant to his alleged damages. But documents showing Plaintiff's earnings with a past employer—i.e., wages earned before his employment with Defendant—are not relevant.

An award of back pay under Title VII is meant to "restor[e]" the injured worker "to the economic position in which they would have been but for the discrimination." *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 252 (5th Cir. 1974); *Jackson v. Host Intern., Inc.*, 426 F. App'x 215, 222 (5th Cir. 2011) ("Back pay commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred."). The focus is necessarily on the employee's compensation during his or her employment with the defendant employer. Compensation and other employment records relating to a previous employer would therefore be irrelevant to determine the amount of "back pay otherwise allowable." 42 U.S.C. § 2000e-5(g)(1); *see also Maxwell v. Health Center of Lake City, Inc.*, 2006 WL 1627020, at *3 (M.D. Fla. June 6, 2006) (While a former employee's salary after employment "is relevant to the issue of mitigation of damages, Defendant has failed to show why her previous earnings have any relevance to damages."); *Graham v. Casey's General Stores*, 206 F.R.D. 251, 255 (S.D. Ind. 2002) (defendant failed to show why "salary information from a previous employer is in any way relevant to damages" in an employment discrimination case).

Back pay may be reduced, however, by "[i]nterim earnings or amounts earnable with reasonable diligence by" the employee. 42 U.S.C. § 2000e-5(g)(1). First, Plaintiff's rate of pay at his current job, or any job held after his employment with Delta ended on March 9, 2016, is obviously relevant and discoverable evidence of "interim earnings," which may warrant a reduction of back pay. Second, an employer may defend against and reduce an award of back pay by showing the employee failed to mitigate his or her damages. The burden is on the employer to prove the (1) availability of substantially equivalent work; and (2) former employee's failure to exercise reasonable diligence to obtain it. *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 393 (5th Cir. 2003).

"Substantially equivalent employment ... affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [former employee] has been discriminatorily terminated." *Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990). "The point of comparison must be the employment position with respect to which discrimination occurred." *Buckingham v. Booz Allen Hamiltom, Inc.*, 64 F. Supp. 3d 981, 985 (S.D. Tex. 2014).

With these principles in mind, whether Plaintiff's current position, or any position held after March 9, 2016, is substantially equivalent to his job with Defendant is relevant to mitigation and obviously discoverable. "Plaintiff's past employment, however, is not relevant nor is it proportional to the needs of this case." *Williams v. United States Environmental Services, LLC*, 2016 WL 684607, at *6 (M.D. La. Feb. 18, 2016); *see also Boehms v. Crowell*, 139 F.3d 452, 460 (5th Cir. 1998) ("[O]ur focus in a mitigation analysis—and the base from which all comparisons about whether 'reasonable efforts' to obtain comparable work are made—must be the employment position with respect to which discrimination occurred."). Therefore, to the extent Interrogatory No. 3 and Request for Production No. 1 seek evidence related Plaintiff's employment between March 9, 2016, and the present, the Court will permit discovery of that information.

**Performance.** Defendant also contends that evidence of Plaintiff's employment history is relevant because it "may reflect a pattern of unsatisfactory performance in similar positions." The Court disagrees.

In a disparate treatment claim, "the ultimate issue is the employer's reasoning at the moment the questioned employment decision is made." *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004) ("a justification that could not have motivated the employer's decision is not evidence that tends to illuminate the ultimate issue and is therefore simply irrelevant"); *see also Price*

*Waterhouse v. Hopkins*, 490 U.S. 228, 252 (1989) (courts should conduct a snapshot inquiry into the employer's motive at the exact instant the decision was made). Therefore, the "evidence relevant to determining whether" an employer terminated an employee for legitimate nondiscriminatory reasons "is evidence that goes to what [the employer] knew at the time [it] ... recommended [the employee's] termination." *Perez v. Tx. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 210 (5th Cir. 2004).

According to Defendant, Plaintiff was terminated for poor performance. However, Defendant now seeks additional records seemingly to bolster the reasons given for its previous employment action. This position is misguided. "To establish its given reason for terminating Plaintiff, Defendant must present evidence of the actual sub-standard performance observed by Defendant, not some other employer. Any new records from other employers could not have motivated Defendant's decision at the time it was made and are therefore irrelevant." *Williams*, 2016 WL 684607, at *6; *see also EEOC v. Texas Roadhouse, Inc.*, 303 F.R.D. 1, 3 (D. Mass. 2014) (employment records from other employers were not relevant to show charging party's "'performance at other employers was deficient,' " as "the factual issue at trial will be what Texas Roadhouse knew ... at the time of the alleged discrimination"); *Sanders v. Dalcraft, LLC*, 2009 WL 1392602, at *2 (N.D. Tex. May 18, 2009) (rejecting argument that employment records from former employers were relevant and discoverable because they "may show performance deficiencies similar to those relied upon by [the defendant] to justify the termination"); *Allen v. CVS Pharmacy, Inc.*, 2013 WL 3873239, at *12 (S.D. Tex. July 25, 2013) (recognizing that "the Supreme Court has cautioned that employers should not, as a routine matter, undertake extensive discovery into an employee's background or performance to resist claims of discrimination"). Therefore, evidence of Plaintiff's job performance or reasons for leaving other jobs are irrelevant.

For the reasons given above, Defendant's Motion to Compel is **GRANTED in part** and **DENIED in part** as to **Interrogatory No. 3** and **Request for Production No. 1**, as outlined by the Court above. The Court expressly **limits** Interrogatory No. 3, and any related documents sought through Request for Production No. 1, to the following information:

> Every job (whether full or part-time) that Plaintiff has held **between March 9, 2016, and the present**. For each job, Plaintiff must provide:
>
> (a)   employer's name, address and phone number;
> (b)   dates of employment;
> (c)   compensation; and
> (d)   description of the work performed.

### D.   Benefits Received after March 9, 2016

Defendant's Interrogatory No. 11 asks whether Plaintiff has "applied for or received any unemployment benefits, disability benefits, retirement benefits, pension benefits or worker's compensation [benefits]" since his termination on March 9, 2016. (R. Doc. 51-1 at 7). And Request for Production No. 1 seeks production of any documents referenced in Plaintiff's response. Similarly, Request for Production No. 7 asks Plaintiff to sign an authorization for the release of his records from the Social Security Administration. (R. Doc. 51-1 at 8). According to Defendant, the requested information is relevant to Plaintiff's alleged back pay and monetary damages and is therefore discoverable.

A successful employment discrimination plaintiff is generally entitled to back pay. *See* 42 U.S.C. § 2000e-5(g)(1). In determining the award, the court must bear in mind the "central statutory purpose[]" of back pay—"eradicating discrimination throughout the economy and making persons whole . . . ." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 421 (1975) (The purpose of Title VII "was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other

employees. Backpay has an obvious connection with this purpose."); *Salge v. Edna Indep. Sch. Dist.*, 320 F. Supp. 2d 542, 544 (S.D. Tex. 2004) ("to discourage [] discrimination and to compensate" its victims); *EEOC v. United Bible Fellowship Ministries, Inc.*, 2015 WL 13649825, at *3 (S.D. Tex. May 19, 2015) ("While back-pay is not automatic or mandatory, it is an integral part of the primary objective of Title VII to deter unlawful employment practices.").

And while "[m]ost courts have refused to deduct such benefits as social security and unemployment compensation from [back pay] awards," *Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 209 (5th Cir. 1986) (refusing deduction), that decision is ultimately "within the discretion of the district court," *Matherne v. Wilson*, 851 F.2d 752, 762 (5th Cir. 1988). *See also U.S. Equal Employment Opportunity Comm'n v. United Bible Fellowship Ministries, Inc.*, 2015 WL 13649825, at *4 (S.D. Tex. May 19, 2015) (declining a deduction, but noting: "[I]n the Fifth Circuit, the District Court has discretion to deduct collateral sources of payments such as unemployment benefits from a back pay award."); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 382 (5th Cir. 1988) (Finding the district court did not err "by refusing to deduct unemployment compensation benefits from the back pay award to Johnson and from the back pay and front pay award to Walton."); *EEOC v. Martin Marietta Corp.*, 1987 WL 9270, at *3 (E.D. La. Apr. 2, 1987) (The court was "impressed by the principles developed by the jurisprudence that the state unemployment compensation fund was designed to serve a wholly independent social policy; that this fund is not to be a factor in back pay awards under Title VII and that the collateral source rule is applicable to any unemployment compensation benefits derived from that system received by Ms. Morris."); *Dufresne v. J.D. Fields And Co.*, 2001 WL 1287122, at *2 (E.D. La. Oct. 22, 2001) ("Further, even if Plaintiff had received unemployment compensation benefits, the court finds that they are a collateral source that should not be deducted from back pay."); *but see*

*Guthrie*, 803 F.2d 210 (pension or retirement benefits paid out of the defendant-employer's retirement fund can be used to off-set back pay award); *Salge v. Edna Indep. Sch. Dist.*, 320 F. Supp. 2d 542, 544 (S.D. Tex. 2004) ("Whether retirement benefits should be offset from an award of lost wages depends on whether the benefits were provided or funded by the employer or the employee.").

Because the trial court has the discretion to deduct any unemployment or similar benefits received by Plaintiff from an award of back pay, whether Plaintiff' received any "unemployment benefits, disability benefits, retirement benefits, pension benefits or worker's compensation" between March 9, 2016, and the present falls within the scope of discovery. However, whether Plaintiff "applied for" any of these benefits is not relevant. The Court also finds Defendant's request that Plaintiff execute an authorization for the release of his social security records to be overbroad. Although Defendant has failed to provide the Court with a copy of the release, depending on its scope, the release could potentially disclose sensitive medical information not relevant to this litigation.

For these reasons, Defendant's Motion to Compel is **DENIED** as to **Request for Production No. 7**. However, the Motion is **GRANTED in part** and **DENIED in part** as to Interrogatory No. 11 and Request for Production No. 1, as outlined by the Court above. The Court expressly **limits Interrogatory No. 11**, and any related documents sought through **Request for Production No. 1**, as follows:

> Plaintiff must disclose any "unemployment benefits, disability benefits, retirement benefits, pension benefits or worker's compensation [**benefits**]" received between **March 9, 2016** and the **present**. Plaintiff's disclosure should include the **amount** and **date** of each **payment**. Plaintiff should likewise produce **documents substantiating** each **payment**.

### E.     Agreement to Supplement

According to Defendant, Plaintiff agreed to supplement his responses to Request for Production Nos. 2, 4, and 6 by August 7, 2020, but has not provided any documents to date. (R. Doc. 51-1 at 8-9). In his Opposition, Plaintiff refutes this account. Because there seems to be a misunderstanding between the parties, the Court considers each request below.

Request for Production No. 2 asks for any written or electronic communications between Plaintiff and Delta or Delta employees. The Court finds this request to be reasonable and within the scope of discovery, as communications between Plaintiff and Delta would shed light on the employment relationship at issue in this litigation. Therefore, Defendant's Motion to Compel is **GRANTED** as to **Request for Production No. 2**, and Plaintiff must **produce** all responsive documents in his possession, custody or control within **21 days** of this Order.

Request for Production No. 4 asks for any "diary entries, journal entries, or other personal notes maintained by [Plaintiff] relating to the allegations made in the Complaint." (R. Doc. 51-3 at 6). The Court finds this request to be generally problematic, given that Plaintiff is pro se and responsive documents may include his litigation strategies. However, Defendant indicates that Plaintiff maintained a list of all jobs he worked on while at Delta (R. Doc. 51-1 at 9), and these specific notes are relevant and non-intrusive. The Court will therefore **partially GRANT** Defendant's Motion to Compel as to **Request for Production No. 4** by requiring Plaintiff to **produce** any **list** he **maintains** of the **jobs he worked** on while employed by Delta. Plaintiff must produce the list within **21 days** of this Order. Otherwise, Defendant's Motion is **denied** as to Request for Production No. 4.

Request for Production No. 6 seeks any exhibits Plaintiff might use at trial. Plaintiff properly objected to this request. "If this case goes to trial, the Court will order the parties to

provide an exhibit list through an appropriate pre-trial order." *Mack v. Benjamin*, 2014 WL 7359054, at *2 (M.D. La. Dec. 23, 2014) (denying motion to compel response to an identical request). Until that time, this request is premature. *See Nguyen v. Louisiana State Board of Cosmetology*, 2016 WL 3646854, at *1 (M.D. La. April 13, 2016) ("Court will not issue an order compelling the identification of may-call witnesses at a time that conflicts with its own Scheduling Order."). Therefore, Defendant's Motion to Compel is **DENIED** as to **Request for Production No. 6**.

Nonetheless, the Court notes that, similar to the information sought in Request for Production No. 6, the parties were required to provide "a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses," as part of their Initial Disclosures. Fed. R. Civ. P. 26(a)(1)(ii). Rule 26(e)(1) further obligates all parties to continuously "supplement or correct" their initial disclosures "in a timely manner if [they] learn[] that in some material respect the disclosure . . . is incomplete or incorrect . . . ."

The parties are likewise reminded that under Rule 37(c)(1), a party who fails to give information "or identify a witness as required by Rule 26(a) or (e) . . . is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless." *See Caskey v. Man Roland, Inc.*, 83 F.3d 418, at *5 (5th Cir. 1996) ("district court violated its discretion in failing to invoke the mandatory exclusion sanction of Rule 37(c)(1)" by not excluding defendant's surveillance tape requested by plaintiff during discovery, but presented by defendant for the first time at trial); *Red Dot Bldgs. v. Jacob Technology, Inc.*, 2012 WL 2061904, at *3 (E.D. La. June 7, 2012) (Rule 37(c)(1)'s exclusion "is

mandatory and automatic unless the party demonstrates substantial justification or harmlessness."); *Moore v. BASF Corp.*, 2012 WL 4344583, at *4 (E.D. La. Sept. 21, 2012) (a party is not excused from its Rule 26 obligations "because it has not fully investigated the case").

With that in mind, if any documents are later identified on Plaintiff's exhibit list that were not otherwise made known to Defendant during discovery, despite Plaintiff's obligation to do so, Defendant may move the district judge for an order striking those exhibits.

Signed in Baton Rouge, Louisiana, on January 5, 2021.

*[Signature]*

**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**