UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**SERGIO CASANOLA**                                    **CIVIL ACTION**

**VERSUS**                                              **NO. 19-300-JWD-SDJ**

**DELTA MACHINE AND
IRONWORKS, LLC**

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the United States District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the proposed findings of fact and conclusions of law in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on April 19, 2021.

*[signature]*

**SCOTT D. JOHNSON
UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

**SERGIO CASANOLA**                                           **CIVIL ACTION**

**VERSUS**                                                    **NO. 19-300-JWD-SDJ**

**DELTA MACHINE AND
IRONWORKS, LLC**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is a Motion for Summary Judgement (R. Doc. 57) filed by the only remaining Defendant,[1] Delta Machine & Ironworks, LLC, on December 18, 2020. Nearly 3 months later, Plaintiff filed an untimely Opposition (R. Doc. 60) on March 3, 2020.[2] As permitted by Local Rule 7(f), Defendant responded by filing a Reply Memorandum (R. Doc. 62). After obtaining leave of Court, Plaintiff filed a Sur-Reply (R. Doc. 65). With the matter fully briefed, the Court has reviewed the parties' memoranda and supporting exhibits, along with the applicable law. Based on its review, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment (R. Doc. 57) be **GRANTED** and Plaintiff's cause of action be **DISMISSED with prejudice**.

---

[1] Plaintiff filed suit against Chris Berry in addition to Delta Machine & Ironworks, LLC. However, Chris Berry was dismissed from this litigation on March 11, 2019. (R. Doc. 19).

[2] Although Plaintiff's Opposition was untimely, the Court has fully considered it, as Plaintiff is proceeding without representation, and Defendant had the opportunity to respond to Plaintiff's untimely filing. In its Reply, Defendant not only points to the untimeliness of Plaintiff's Opposition, but also his failure to comply with Local Rule 56, which in part requires a response to the movant's statement of uncontested facts. The Court acknowledges that Plaintiff indeed failed to respond to Defendant's Statement of Uncontested Material Facts in his Opposition (and only did so in his Sur-Reply (R. Doc. 65-1)), and that Defendant correctly relays the requirements of Local Rule 56(c), as well as its consequences, *see* LR 56(f). Nonetheless, the Court will conduct a full substantive analysis of Defendant's Motion for Summary Judgment, rather than summarily granting relief based on Plaintiff's failure to comply with Local Rule 56 or his lack of evidence. As the movant, Defendant must still show "there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law." *Kitchen v. BASF*, 343 F. Supp. 3d 681, 687 (S.D. Tex. 2018).

## I. BACKGROUND

In this action, Plaintiff claims that Defendant violated Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-2, and 42 U.S.C. § 1981, by subjecting Plaintiff to harassment and ultimately terminating his employment after less than 6 months because of his race (Hispanic) and national origin (Cuban) (R. Doc. 44); (R. Doc. 60-3 at 51). *See O'Neal v. Cargill, Inc.*, 178 F. Supp. 3d 408, 420 (E.D. La. 2016) ("Claims of race discrimination [and a] racially hostile work environment . . . may be brought under Section 1981. Section 1981 claims are governed by the same standards as Title VII . . . .").

## II. LEGAL STANDARD

Summary judgment shall be granted when there are no genuine issues as to any material facts and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. When a motion for summary judgment is properly made and supported under Rule 56(c), the opposing party may not rest on the mere allegations of their pleadings, but rather must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); Fed. R. Civ. P. 56(c)(1). The non-movant's evidence is to be believed for purposes of the motion, and all justifiable inferences are to be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, summary judgment must be entered against the plaintiff if he or she fails to make an evidentiary showing sufficient to establish the existence of an element essential to his or her claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Without a showing sufficient to establish the existence of an element essential to the plaintiff's claim, there can be "no genuine issue as to any material fact since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

### III. DISCUSSION

In his Complaint, Plaintiff asserts race and national origin-based disparate treatment and harassment claims under Title VII. He asserts the same racial harassment and disparate treatment claims under 42 U.S.C. § 1981, as well. (R. Doc. 44). While Plaintiff presents claims under both Title VII and § 1981, "the analysis under both statutes are identical, the only substantive differences . . . being their respective statute of limitations and the requirement under Title VII that the employee exhaust administrative remedies." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005). Because neither of these differences are pertinent here, the Court will analyze Plaintiff's § 1981 and Title VII claims under the precedents applicable to Title VII. *See Jones*, 427 F.3d at 992; *DeCorte v. Jordan*, 497 F.3d 433, 437 (5th Cir. 2007).

#### A. Harassment

According to Plaintiff, he was called "slow" by his supervisor on 2 occasions (R. Doc. 60 at 12) ("Boy, you slow" was said on one occasion), he was "flipped off" by a project manager, "and was ridiculed and mocked." (R. Doc. 60 at 14). As an example of this ridicule, Plaintiff recalls a time when his supervisor spoke a non-offensive phrase in German to "compet[e]" with Plaintiff who is himself bi-lingual. (R. Doc. 60-3 at 58) ("His joke was about competition, about he tried to be bilingual . . . He didn't say any phrase like any racial phrase in German or anything . . . .").

Plaintiff claims that the above conduct was "belittling" and constitutes national origin and racial harassment in violation of Title VII. And while he is not African American and admits that "the term had very little effect on [him]," Plaintiff points out that the "word 'boy' is a demeaning term used toward adult black males in the south." (R. Doc. 60 at 12).

To state a claim for racial harassment, an employee must show: "(1) that the employee belongs to a protected class; (2) that the employee was subject to unwelcome [ ] harassment; (3)

that the harassment was based on [a protected characteristic]; and (4) that the harassment affected a 'term, condition, or privilege' of employment.'" *E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 453 (5th Cir. 2013).

Plaintiff's own testimony indicates that most of the conduct listed above was not racially-motivated or motivated by his national origin, but was instead evidence of personality conflicts. (R. Doc. 60-3 at 57-58) (describing being flipped off); (R. Doc. 60-3 at 58) (Chris Berry was being competitive when he spoke a non-offensive phrase in German); (R. Doc. 60 at 13) ("Chris Berry answered that he referred to Mr. Casanola as slow because . . . Mr. Casanola was making too many mistakes."). In fact, none of the alleged conduct suggests a discriminatory animus against Plaintiff's race or national origin.[3] Nonetheless, even if the Court assumed that the alleged conduct occurred and was motivated by race or national origin, it is neither sufficiently severe nor pervasive to constitute harassment. "[C]omplaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [off-color] jokes, and occasional teasing" will not amount to a violation of Title VII. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Because there are no genuine issues as to any material facts concerning Plaintiff's claim for harassment, Defendant's Motion for Summary Judgment should be **GRANTED** as to Plaintiff's claim for harassment under both Title VII and § 1981.

---

[3] The Court understands and does not discount that the term "boy" carries a racial connotation towards African American males. But Plaintiff is not African American. And fatal to his claim, Plaintiff has stated that "the term had very little effect on Mr. Casanola, who was more concern[ed] with his job, than he was with the meaning [of] a word he did not know." (R. Doc. 60 at 12). To state a claim for harassment, the alleged conduct must be "both objectively and subjectively offensive" enough to alter the terms and conditions of employment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) ("[I]n order to be actionable under [Title VII], a[n] [] objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."). Because the term 'boy' had "very little effect" on Plaintiff (R. Doc. 60 at 12), he cannot show that the alleged conduct was subjectively severe enough to be actionable under Title VII.

B.     **Termination**

Title VII makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race" or national origin, among other things. 42 U.S.C. § 2000e-2(a)(1). To state a cause of action under Title VII, a claimant must show that he or she suffered an adverse employment action because of his or her race or national origin, or that race or national origin was a motivating factor in the employer's decision. *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512-513 (5th Cir. 2011) (because of race); *Assariathu v. Lone Star Health Management Associates, L.P.*, 516 F. App'x 315, 321 (5th Cir. 2013) (race was a motivating factor). If the plaintiff meets these requirements, a presumption of discrimination arises, which the defendant must then rebut by articulating a legitimate nondiscriminatory reason. *Bodenheimer v. PPG Indus. Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *Turner v. Kansas City. S. Ry. Co.*, 675 F.3d 887, 900 (5th Cir. 2012) (The burden shifts to the defendant to "produce admissible evidence that [its] decisions were based on legitimate, nondiscriminatory reasons."). If the defendant carries its burden, the plaintiff must then prove by a "preponderance of the evidence that the legitimate reasons offered . . . were a pretext for discrimination." *Burdine*, 450 U.S. at 253.

According to Plaintiff, the reason for his dismissal "is not the unfounded unsatisfactory work performance," cited by Defendant, "but the mindset of fabrication manager Chris Berry, and Petitioner's race and national origin. Defendant is aware there was no unsatisfactory work performance." (R. Doc. 44).

But there is indeed evidence presented by Defendant in support of its legitimate non-discriminatory reason—that Plaintiff was under-performing and that his work was lagging behind. (R. Doc. 57-7 at 48) (Plaintiff was fired because he was "too slow and made too many mistakes

even after being told he needed to improve." Plaintiff was informed of "multiple complaints made by project managers about [his] work . . . These complaints had been going on for some time . . . ."); (R. Doc. 57-8 at 1, 2, 9). In fact, even Plaintiff has admitted that his work was behind schedule in both his Complaint (R. Doc. 44 at 4) (Plaintiff's work "lagged because of the implementation of M1 and his lack [of] knowledge of the program."), and deposition (R. Do. 60-3 at 59) ("So some of the – when he told me – when he called me slow, some of the work was behind."); (R. Doc. 57-5 at 3) ("I was learning."). And as for the "mindset" of Plaintiff's supervisor, the conduct Plaintiff has pointed to, again, even if true, cannot offend Title VII as it is not racially motivated. Instead, it suggests a personality conflict—if anything. (R. Doc. 57-7 at 23) ("I was never part of the team."); (R. Doc. 57-5 at 4) (project manager flipped Plaintiff off because he disagreed with Plaintiff's point of view). Title VII "does not set forth a general civility code for the American workplace." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

Finally, while Plaintiff claims that his Caucasian coworkers made mistakes without consequence, he has not produced any clear evidence of those mistakes—e.g. reprimands, performance reviews, etc.—that might indicate their severity or frequency. And when asked about the mistakes made by others whom he claims are similarly situated, Plaintiff simply testified that he knew of their mistakes because he sat close by. (R. Doc. 60-3 at 53-54) (I know they made mistakes because I sat close by). This is insufficient to create a genuine issue of material fact to survive summary judgment.

Because Defendant has produced a legitimate non-discriminatory reason for Plaintiff's termination, and Plaintiff is unable to rebut Defendant's reason, or even produce evidence suggesting a discriminatory animus, Defendant's Motion for Summary Judgment should be **GRANTED** as to Plaintiff's claim for wrongful termination under both Title VII and § 1981.

## IV. CONCLUSION

For the reasons given above, the Court **recommends** that Defendant's Motion for Summary Judgment be **GRANTED** and that Plaintiff's cause of action be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on April 19, 2021.

_____
**SCOTT D. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**